# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Docket No: 3:24-CR-26 |
| v. ) | |
| ) | JUDGE VARLAN |
| JULIAN PAUL GERDEMAN ) | |

## SENTENCING MEMORANDUM FOR THE UNITED STATES

The defendant has entered into a plea agreement of the kind specified in Federal Rules of Criminal Procedure 11(c)(1)(C). The United States and the defendant have both agreed that the appropriate disposition of this case is a sentence of one hundred and eighty (189) months imprisonment, any special sex offender conditions, supervised release, as well as any lawful fines, special assessment fees, forfeiture, and restitution imposed by the Court. [Doc. 31, Plea Agreement, ¶ 6]. The United States respectfully asks this Court to accept the specific sentence agreed to by the parties.

If a plea agreement includes a specific sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Court may accept the agreement if the Court is satisfied that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form. See U.S.S.G. §6B1.2(c).

The guideline range as to counts one (1), two (2) and five (5) of the indictment is one hundred sixty-eight to two hundred and ten (168-210) months imprisonment. [Doc. 44, Presentence Report (PSR) ¶ 90]. Therefore, the 11(c)(1)(C) plea agreement of one hundred and eighty-nine (189) months imprisonment is within the applicable guideline range.

## STATEMENT OF FACTS

### 1. Overview

Defendant has committed serious crimes against children. The most serious of which will never be prosecuted because of an intentional hindering and/or preventing of his prosecution of these crimes against children. Luckily, even with assistance, the defendant could not extricate himself completely from his world of sexually victimizing children, and he awaits sentencing from this Court.

The defendant's history confirms he is a child predator. At the age of thirteen (13), the defendant had already been investigated by the Tennessee Department of Children Services (DCS) for inappropriate sexual contact on two minor children. [Doc. 44, ¶ 32]. By the time the defendant was in his mid-twenties, his life was consumed with sex crimes against children.

The defendant's girlfriend, co-defendant Emilee Brooke Gregory (GREGORY), earned money by babysitting for her best friend's two-year-old daughter and younger son. The defendant accompanied GREGORY when she babysat. One day, GREGORY saw the defendant coming out of the two-year-old's room and he looked guilty. GREGORY looked on the defendant's phone without his knowledge. In the hidden photos, GREGORY found four (4) videos of the defendant sexually abusing the two-year-old child. [Doc. 45, GREGORY's PSR, ¶¶ 23, 26]. GREGORY watched the videos produced by the defendant before permanently removing the videos from defendant's cellular (cell) telephone. GREGORY described the videos in a diary she saved on her cell phone, and again when interviewed by law enforcement. GREGORY wrote: "[I] saw a video today of my TWENTY FIVE year old boyfriend CUMMING on the TWO year old daughter of my best friend. That we babysit as a somewhat steady job right now." [*Id.,* ¶22]. On the following day there was another diary entry where

GREGORY was reflecting again on finding the CP videos specifically where the defendant ejaculated on the child, ...."hearing that girl cry' for her mom was so triggering because that's like all she was doing in those videos [defendant] took." [Id., ¶24]. In the interview with law enforcement, GREGORY described another video: "In one video the child was naked from the waist down, and [defendant] was playing with her vagina. [Doc. 44, ¶ 31].

Fortunately, hell hath no fury like a woman scorned. GREGORY confronted the defendant and told him she would turn him in if he kept up with his crimes against children. The defendant did not heed GREGORY's warnings and continued collecting CP videos and images, researching links, book marking tabs involving CP, sexually communicating with a fourteen (14) year old girl on Reddit, and watching animated child pornography on his phone. [*Id.,* at 31], [Doc. 45, at 25]. Although GREGORY failed on her promise to turn the defendant into the authorities, she did keep the journal describing the videos of CP the defendant had produced, as well as videoing the other CP related items on the defendant's cell phone which saved to her Google storage drive. [Doc. 45, at 25]. What GREGORY did not realize was that Google reports CP located in their users' Google storage. Google sent a tip to the National Center for Missing and Exploited Children (NCMEC) regarding the CP that GREGORY had videoed from the defendant's phone, and diary entries about his production of her best friend's child. NCMEC sent a cybertip to local law enforcement based on GREGORY's location. Through the investigation by local law enforcement, it was determined that GREGORY was living with the defendant at the defendant's mother's home in an unattached garage.

The defendant was shielded from law enforcement once again when he and GREGORY were informed by his mother, Dianne Lashmit (LASHMIT), of the investigation. LASHMIT kicked both the defendant and GREGORY out of living in the garage, but LASHMIT paid for a

motel room for the two for two weeks. [Doc. 44, ¶ 29-30]. Several days after the defendant and GREGORY were kicked out of the garage, a search warrant for LASHMIT's home and outbuildings was executed. [Id. at ¶ 30]. LASHMIT, after initially lying about the whereabouts of GREGORY and the defendant, told law enforcement they were located in a motel in Knox County. A knock and talk was executed at the motel room. Both the defendant and GREGORY were present. The defendant voluntarily provided his cell phone to law enforcement. A forensic examination was done on the phone and showed that all the CP that had been recorded by GREGORY had been wiped from the phone. However, there were other CP images/videos on the phone. [*Id.* at ¶30 & 33]. Another search was obtained for the other electronics the defendant had in his vehicle at the hotel. [*Id.* at ¶30]. A forensic examination was done on those items and all had CP on them. [*Id.* at ¶34].

GERDEMAN has admitted to the CP found on his electronics.

### 2. *Impact upon the victims*

The defendant has victimized literally thousands of child victims. [*Id.* at ¶34]. The sad truth is the United States has no way of determining how many or who they are. There is no tangible way to measure the harm a child receives every time a CP image/video of them goes out over the internet or when they are sexually molested for the purpose of continued sexual gratification of the person producing the CP. What we do know is that each victim has been sentenced by the defendant to a lifetime of trauma to try and overcome. The victim's sentence may not be one of prison, but it is a lifetime sentence none-the-less for the defendant's selfish sexual arousal.

### ANALYSIS

### 3. *The factors stated in 18 U.S.C. § 3553(a) favor a guideline sentence.*

As the Court and the defendant are aware, the sentence to be imposed should be "sufficient, but not greater than necessary," to meet the following needs as set forth in 18 U.S.C. § 3553(a). Specific to the instant case, three factors for consideration are:

> (A) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;

**(A)** **The sentence to be imposed should be sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment.**

When fashioning an appropriate sentence, the seriousness of the offense, promotion of respect for the law, and just punishment are all factors to consider. There are three facts known to be true in this case. First, receiving and possessing CP are serious crimes. Period. Second, it will never be known the total devastation the defendant has foisted upon his victims or how many victims he has. Thirdly, the defendant will never be punished for all his crimes against children because people were willing to impede criminal investigations for the defendant.

The defendant's crimes are serious and troubling. The defendant's crimes against children have been proven to be across his lifetime since at least the age of thirteen. [*Id.* at ¶32]. We know the defendant was receiving CP since at least January 5, 2022. [*Id.* at ¶1]. It could be argued that he has a child sexual addiction, but it was not something he was willing to stop. It didn't stop when DCS caught him, when his girlfriend threatened to turn him in, or even when his mother told him about the investigation. It is obvious from the defendant's actions he had no intention of stopping.

The theory is if the sentence is sufficient enough but not greater than necessary, the defendant will gain respect for the law. Maybe a one hundred and eighty-nine (189) month

sentence of imprisonment will promote the defendant's respect for the law. But in this case, just punishment is the central concern to protect society's children.

**(B)** **A sentence to include imprisonment would afford adequate deterrence to criminal conduct.**

Section 3553(a) also guides the Court to consider the need for a sentence that affords adequate deterrence to criminal conduct. From the standpoint of sentencing, deterrence takes two forms: (1) specific deterrence, to deter similar crimes by the defendant who is being sentenced, and (2) general deterrence, to deter criminal actions by others who may contemplate committing similar offenses. A sentence of one hundred eighty-nine (189) months imprisonment is hopefully consistent with at least the idea of general deterrence.

It is imperative that the defendant, and would be child predators, to know crimes against children will not be tolerated, and those who do will suffer stiff consequences. Sentencing the defendant to the one hundred eighty-nine (189) months imprisonment will hopefully send a message that each of his victims are important and are a consideration in fashioning a stiff sentence.

A stiff sentence also sends a message to society that the act of distributing and possessing CP is a serious crime against a child. These predators need to understand there is no loophole for not create the CP. Committing crimes that support the supply and demand of CP affects every child, past and future, that have been sexually abused for an image or video. If a long sentence keeps at least one child from being sexually victimized, the sentence provided general deterrence.

**(C)** **A sentence of one hundred eighty-nine (189) months imprisonment will protect the public from further crimes by the defendant.**

Most importantly, our children need to be protected from the acts of this defendant. The

defendant has proven multiple times he has no concern for the victims of his crimes. Taking the defendant out of society will ensure that one less child predator is on our streets during his period of incarceration. To put it another way, a generation of children will be able to become adults with one less child predator with which to contend.

**WHEREFORE**, for the reasons stated above, the United States would request this honorable Court to impose a sentence of one hundred eighty-nine (189) months imprisonment, along with a term of supervised release, restitution, forfeiture, fines, special assessments, and special conditions the Court deems appropriate for the defendant.

Respectfully submitted this 28th day of March 2025,

                                    FRANCIS M. HAMILTON III
                                    UNITED STATES ATTORNEY

By:    *s/ Jennifer Kolman*
          Jennifer Kolman
          Assistant United States Attorney
          GA Bar# 427930
          800 Market Street, Suite 211
          Knoxville, Tennessee 37902
          (865) 545-4167