UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:24-CR-026-001 |
| ) | JUDGE VARLAN |
| JULIAN PAUL GERDEMAN ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Julian Gerdeman, through his undersigned counsel, files this Sentencing Memorandum requesting this Honorable Court to determine a sentence that is sufficient but not greater than necessary to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). The Presentence Investigation Report (hereinafter "PSR") filed in this case calculates an effective advisory guideline range of 168 to 210 months, based on total offense level of 34 and a criminal history category of II. Furthermore, the parties have negotiated a Fed. R. Crim. P. 11(c)(1)(C) plea agreement of 189 months, which is comfortably within the guideline range. As will covered in more detailed herein, Mr. Gerdeman asks that this Court accept the plea agreement and sentence him to 189 months of imprisonment. Such a sentence is sufficient but not greater than necessary in light of the factors set out in 18 U.S.C. § 3553(a).

In support thereof, Mr. Gerdeman provides the following:

**I.   Procedural History**

On March 20, 2024, Julian Gerdeman, along with co-defendant Emilee Gregory, was indicted in a seven-count indictment. (Doc. 1). The indictment charged Mr. Gerdeman with two counts of receipt of child pornography, one count of distribution of child pornography, and one count of possession of child pornography. The remaining counts applied only to co-defendant

Gregory. Mr. Gerdeman was arrested on March 22, 2024, and made his initial appearance that day. He has remained in continuous federal custody since that date.

On October 16, 2024, Mr. Gerdeman pursuant to a written plea agreement, entered a guilty plea to two counts of receipt of child pornography and one count of possession of child pornography. Pursuant to the same agreement, the parties agreed, via Fed. R. Crim. P. Rule 11(c)(1)(C), that a sentence of 189 months' imprisonment, followed by any lawful term of supervised release, is the appropriate disposition.

II. **History and Characteristics of Mr. Gerdeman and the Nature and Circumstances of the offense.**

At 26 years' old, Julian Gerdeman faces a significant term of imprisonment for his actions. His actions warrant a significant sentence. It is hopeful, however, that Julian can address his mental health issues, further his education, and tackle his substance abuse problems during his term of incarceration.

Julian has struggled with mental health most of his adult life. He has received counseling in the past and has also faced previous hospitalizations. Julian will benefit from a mental health evaluation during his term of incarceration. He needs an understanding of any diagnoses and medications, if appropriate. Julian's struggles with mental health are exacerbated by his daily use of marijuana. He plans to address both mental health and substance abuse while he is incarcerated in hopes that he can once again be a productive member of society.

Julian has fully accepted responsibility for his role in the instant offense. His acceptance has never wavered, and he is prepared to spend a significant amount of time in prison for his conduct. If the Court accepts the parties Rule 11(c)(1)(C) plea agreement, Mr. Gerdeman will receive a 189-month sentence, or nearly 16 years. Julian has never made any excuses for his

conduct in this case. He knows he was wrong and he understands he needs to be punished appropriately.

### III. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.

A sentence of 189 months would properly encompass the factors set out in 18 U.S.C. § 3553(a)(2)(A). Julian understands this is a serious offense and is prepared to serve a lengthy sentence. Although this is not his first term of incarceration, it is easily the lengthiest. The agreement to the middle of the guideline range, rather than the bottom, further endorses the seriousness of Julian's conduct and the need to be punished.

There are significant collateral consequences as well that flow from the conviction of this offense. Because "the Guidelines failed to account for the significant collateral consequences [the] defendant suffer[s] as a result of his conviction," a lesser consequence may be justified. *United States v. Wachowiak*, 412 F.Supp.2d 958, 964 (E.D. Wisconsin, 2006), *aff'd*, 496 F.3d 744 (7th Cir. 2007); *see also Baird*, 580 F.Supp.2d 889, 894 (D. Neb, 2008) (court considered other punishments that the defendant received such as discharge from the military, a felony conviction, sex offender registration, and the stigma of being a sex offender).

Julian is now a convicted felon *and also* faces a lifetime of state and federal sex offender restrictions and requirements, stringent conditions of supervised release, and prejudicial societal retribution due to his status as a sex offender. All of these consequences adequately address the sentencing factors in 18 U.S.C. § 3553(a)(2)(A).

### IV. The need for the sentence imposed afford adequate deterrence to criminal conduct and protect the public from future crimes of Mr. Gerdeman.

Title 18 U.S.C. § 3553(a)(2)(B) instructs the sentencing court to consider deterrence as a factor in determining a sentence that is "reasonable" for a particular offender. Title 18 U.S.C. § 3553(2)(C)

further instructs the sentencing court to consider the need to protect the public from any future crimes of Mr. Gerdeman.

To deter any future criminal conduct after serving his sentence, Mr. Gerdeman will be under strict sexual offender notification and registration conditions following his release from prison. *See* TENN. CODE ANN. Sections 40-39-211 – 213, 42 U.S.C. § 16913, and E.D. Tenn. Local Rules. Accordingly, a lengthier term of incarceration is not necessary for public protection. This is especially true for a defendant like Mr. Gerdeman who cannot frequent places where minors might be present.

Tennessee law will: 1) require Mr. Gerdeman to register annually; 2) require him to keep his jurisdiction informed as to any change of name, residence, employment and student status; 3) prohibit him from living or working within 1000 feet of a school, day care center, public park, playground, recreation center, or athletic field; 4) prohibit him from entering the premises of any of these places unless he is a student or the parent of a child who is there for legitimate purposes; and 5) require at all times a drivers' license or other identification that identifies him as a sex offender. *United States v. Curtis*, No. 2:02-CR62, 2009 U.S. Dist. LEXIS 6103, at *6-7, n.1 (E.D. Tenn. Jan. 28, 2009), *see also* TENN. CODE ANN. Sections 40-39-211 – 213.

In addition to restrictive conditions imposed as a matter of state law, provisions of federal law require yearly registration and reporting requirements for 15 years. 42 U.S.C. § 16913. Failure to follow federal law yields a penalty of up to 10 years' imprisonment. 18 U.S.C. § 2250. The express purpose of such federal law ("SORNA") is to protect the public from sex offenders and offenders against children. 42 U.S.C. § 16901. Thus, the protection of the public requirement of 18 U.S.C. § 3553(a)(2)(C) is achieved, in great part, via sex offender registration and restriction laws, and not through a lengthy prison term.

Additionally, while on supervised release, Mr. Gerdeman will have to adhere to the proposed sex offender conditions, none of which Mr. Gerdeman objects to. *See* PSR, ¶¶ 103(a)-(m), 104. These

conditions can be imposed for the entire duration of Mr. Gerdeman's term of supervised release, which can be for the rest of this life. PSR, ¶¶ 69-70. The conditions include submitting to sex offender treatment, a psychosexual evaluation, and not possessing any electronic devices with access to the Internet. PSR, ¶ 103(a), (h), (l).

A sentence of 189 months sends a strong message to the community that these acts will not be tolerated and will be punished appropriately. The same 189-month sentence also provides Mr. Gerdeman with an opportunity to get out of prison and again live in society, albeit with appropriate restrictions and conditions. A sentence of 189 months, followed by a term of supervised release, properly accounts for both general and specific deterrence as set out in 18 U.S.C. §§ 3553(a)(2)(B) & (C).

### V. The need for the sentence imposed to provide Mr. Gerdeman with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Bureau of Prisons (BOP) offers an intensive, residential Sex Offender Treatment Program (SOTP-R) that targets "dynamic risk factors associated with re-offense in sex offenders, as demonstrated in empirical research." *See* "Directory of National Programs- Federal Bureau of Prisons" at pg. 19[1]. In addition to addressing recidivism factors, the program also "employs cognitive-behavioral techniques, with a primary emphasis on skills acquisition and practice. The modified therapeutic community model is employed to address pro-offending attitudes and values." *Id*. This program is purely voluntary, lasts between 12-18 months, and requires the individual to participate in 10-12 hours a week in group therapy. *Id*. A recommendation that Mr. Gerdeman complete this program will give him the opportunity for rehabilitation that he seeks. After successful completion of the program, Mr. Gerdeman will need to continue after-care

---

[1] Available at https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf. (last accessed March 26, 2025).

programs to ensure he does not recidivate. The SOTP-R program provides individuals with the necessary after-care and directs them to resources to aid in their re-entry to society.

Julian also seeks any educational and vocational training that can set him up for a better future once he is released from prison. Julian graduated from high school with a 3.4 GPA. He has the ability and intelligence to work in something other than entry-level employment. Furthering his education or acquiring a trade, will bode well for his success upon release.

**VI.   The kinds of sentences available, the applicable category of offense committed by Mr. Gerdeman as set forth in the Guidelines, and the need to avoid unwarranted sentencing disparities among similarly situated defendants.**

The calculated guideline range in the PSR recommends a prison sentence for Mr. Gerdeman. Given his conduct, a significant term of imprisonment is appropriate and anticipated. Pursuant to the plea agreement, Mr. Gerdeman requests that this Honorable Court impose a sentence of 189 months, which is within the applicable guideline range. The applicable offense level was increased by 17 levels for various attributes applicable to Mr. Gerdeman's case. These enhancements capture the full scope of Julian's conduct as it relates to the pictures and videos found in his possession.

For these reasons, and in consideration of all the other factors, Mr. Gerdeman asserts that a sentence of 189 months is adequate and appropriately considers the factors set out in 18 U.S.C. § 3553(a)(3), (4), and (6).

**VII.   The need to provide restitution to any victims of the offense.**

It is undeniable that the children in all of the images that Mr. Gerdeman possessed suffered emotional harm from their depiction. At the time of the filing of this Memorandum, five victims of the identified series have requested restitution. The parties have tentatively agreed to $3,000 per victim, for a total of 15,000.

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018[2] (hereinafter "AVAA") codified Congress' intent to provide better restitution measures to victims of child pornography. Restitution is now mandatory for defendants convicted of a child pornography production offense. 18 U.S.C. § 2259(a). The minimum is $3,000. 18 U.S.C. § 2259(b)(2)(B). In order to determine the appropriate amount of restitution, the Court is to consider "the defendant's relative role in the causal process…" *Id*.

Mr. Gerdeman requests that the Court impose a total amount of restitution of $15,000, which is the minimum allowed by statute per victim letter received. Although this is the minimum amount of restitution authorized, it is still a significant sum of restitution that contributes to the losses suffered by the victims against the backdrop of Mr. Gerdeman's role in their production. This amount of restitution appropriately considers and suffices the sentencing factor set forth in 18 U.S.C. § 3553(a)(7).

## VIII. Conclusion

In consideration of the foregoing, Julian Gerdeman respectfully submits that a sentence of 189 months is sufficient but not greater than necessary to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a). He further requests a recommendation of placement at FCI Butner in Butner, North Carolina or FCI Coleman in Sumterville, FL.

RESPECTFULLY SUBMITTED:

FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC.

BY:   s/ *G. Nicholas Wallace*
      G. Nicholas Wallace
      ASB No. 6992D56F
      Federal Defender Services
      800 South Gay Street, Suite 2400
      Knoxville, TN  37929
      (865) 637-7979

---

[2] Pub. L. No. 115-299, later codified in 18 U.S.C. §2259.